Zimmerman, J.
The Ohio Turnpike is approximately 240 miles in length and extends generally eastwardly and westwardly across the whole northern part of Ohio from the Pennsylvania state line on the east to the Indiana state line on the west. At its eastern terminus it connects with the Pennsylvania Turnpike and at its western terminus with the Indiana Toll Road. It is a four-lane concrete-surfaced divided thoroughfare, two lanes being for vehicles going west and two for vehicles going east. Within the state of Ohio there are some 15 interchanges with 15 principal highways of the Ohio highway system, and only at such interchanges may the traveler enter or leave the *275 turnpike. Both sides of the turnpike right of way are fenced.
Within the right of way there are 17 toll plazas, eight maintenance buildings, an administration building and 16 service-plaza buildings. Various services are furnished the users of the turnpike, including disabled-vehicle service, ambulance service, removal of snow and ice and areas where food, gasoline and oil are available.
Considerable other matter, descriptive of the turnpike and its advantages and facilities, might be narrated, but what has been said should suffice for the purposes of this opinion.
In this appeal, the one matter about which appellant complains is that the board’s decision “was unreasonable and unlawful in finding that the portions of the service plazas in Cuyahoga County leased or rented to private corporations are used exclusively for turnpike purposes and are therefore legally exempt from taxation * * * and in granting remission of the real property taxes thereon.”
Specifically involved are the lands and buildings rented to private corporations for restaurant and gas-station purposes and from which such corporations derive profit.
Section 2, Article XII of the Constitution of Ohio, recites in part that “general laws may be passed to exempt [from taxation] * * * public property used exclusively for any public purpose.”
Pursuant to such constitutional authorization, the Legislature enacted a general statute, represented by Section 5709.08, Revised Code, which reads:
“Real or personal property belonging to the state * * * used exclusively for a public purpose, and public property used exclusively for a public purpose, shall be exempt from taxation.”
And then in connection with the creation of turnpike projects in this state, the General Assembly adopted the broadly worded and comprehensive statute, represented by Section 5537.20, Revised Code, which provides:
‘ ‘ The exercise of the powers granted by Sections 5537.01 to 5537.23, inclusive, of the Revised Code, will be in all respects for the benefit of the people of the state, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and as the operation and *276 maintenance of turnpike projects by the commission will constitute the performance of essential governmental functions, tbe commission shall not be required to pay any taxes or assessments upon any turnpike project, or upon any property acquired or used by the commission under Sections 5537.01 to 5537.23, inclusive, of the Revised Code, or upon the income therefrom, and the bonds issued under such sections, their transfer, and the income therefrom, including any profit made on the sale thereof, shall at all times be free from taxation within the state.”
Emphasizing the over-all intent of the legislative body is Section 5537.23, Revised Code, which carries the injunction:
“Sections 5537.01 to 5537.23, inclusive, of the Revised Code, being necessary for the welfare of the state and its inhabitants shall be liberally construed to effect the purposes thereof.”
Title to all the property comprising the Ohio Turnpike is in the state of Ohio, and the predominant and primary objective of the turnpike creation and operation is to further and promote the interests of the state, to influence favorably its welfare and development, economically and otherwise, and to insure speedy, safe and comfortable travel for the motoring public which makes use of it.
The service plazas, where food and drink are supplied and where gasoline, oil and other necessary motoring needs are furnished, are concomitants of the turnpike operation, and the fact that such facilities are rented out to private corporations who may profit from their operation is incidental and does not change the controlling fact that the project is owned by the public and is devoted essentially to an exclusive public use. See City of Toledo v. Jenkins et al., Board of Tax Appeals, 143 Ohio St., 141, 54 N. E. (2d), 656.
It would be of little advantage to discuss and attempt to reconcile or distinguish the numerous prior decisions of this court touching more or less closely the subject under discussion. Suffice it to say that, on the facts of this particular case and bearing in mind the impelling reasons which motivated the creation of the turnpike and considering all conditions surrounding its operation to meet the demands and necessities of the traveling public, this court is of the opinion that the de *277 cisión of the Board of Tax Appeals is neither unreasonable nor unlawful and does not transgress any constitutional provisions.
The decision is, therefore, affirmed.

Decision affirmed.

Weyganbt, C. J., Matthias and Bell, JJ., concur.
Stewart and Taet, JJ., concur in the judgment.
Herbert, J., dissents.